| | | |
|---|---|---|
| Thomas S. Raley<br>PO Box 275<br>Galesville, Maryland 20765 | \* | IN THE |
| | \* | CIRCUIT COURT |
| Plaintiff, | \* | FOR |
| v. | \* | ANNE ARUNDEL COUNTY |
| Whitestake Improvements LLC<br>4840 Riverside Drive<br>Galesville, Maryland 20765 | \* | |
| | \* | |
| Defendant, | \* | |
| Serve on Resident Agent: | | Case No.: C-02-CV-21-001701 |
| | \* | |
| Richard T. Wright, Esq.<br>170 Jennifer Road, Ste. 315<br>Annapolis, MD 21401 | \* | |
| | \* | |
| AND | | |
| | \* | |
| Mary Tod Winchester<br>4840 Riverside Drive<br>Galesville, Maryland 20765 | \* | |
| | \* | |
| Defendant. | \* | |

## COMPLAINT

**COMES NOW**, Plaintiff Thomas S. Raley, by and through his attorneys, James L. Ellison II, Esq., Jeffrey J. Sadri, Esq., and the law office of Bennett & Ellison, P.C., and hereby sues Defendant Whitestake Improvements LLC and Defendant Mary Tod Winchester (collectively referred to as "Defendants"), and states as follows:

### JURISDICTION AND VENUE

1. This Court has personal jurisdiction pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-102, as Defendant Whitestake Improvements LLC (hereinafter referred to as "Defendant Whitestake") maintains their principal place of business in Maryland and may be served with process in Maryland.

1

2. This Court has personal jurisdiction pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-102, as Defendant Mary Tod Winchester (hereinafter referred to as "Defendant Winchester") is domiciled in Maryland.

3. This Court further has personal jurisdiction pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(3), as all alleged injuries pled herein occurred in Maryland because of the Defendants' conduct in Maryland.

4. This Court constitutes the proper venue pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-201(a), as Defendant Whitestake carries on regular business in Anne Arundel County, Maryland, and Defendant Winchester resides in Anne Arundel County, Maryland.

5. This Court has subject matter jurisdiction pursuant to the Maryland Wage and Hour Law, MD. CODE ANN., LAB. & EMPL., § 3-401, *et seq.* (hereinafter referred to as "MWHL").

6. This Court has subject matter jurisdiction pursuant to the Maryland Wage Payment and Collection Law, MD. CODE ANN., LAB. & EMPL., § 3-501, *et seq.* (hereinafter referred to as "MWPCL").

7. This Court may adjudicate Plaintiff's Maryland common law claims of slander and tortious interference with economic relationships.

8. This Court may adjudicate claims brought under the Fair Labor Standards Act of 1938 (as amended), 29 U.S.C. § 201, *et seq.* (hereinafter referred to as "FLSA").

9. That at all times relevant herein, Defendants each constituted an "employer" within the meaning of the MWHL, MWPCL, and FLSA.

## FACTS COMMON TO ALL COUNTS

10. Defendants employed Plaintiff as "Dockmaster" at their property called Whitestake Point Marina, located at 4883 Church Lane, Galesville, Anne Arundel County, Maryland 20765, from approximately February of 2009 to January of 2019. As of January of 2019, Plaintiff made approximately fifty-one thousand four hundred dollars ($51,400.00) per year.

11. As "Dockmaster," Plaintiff's primary job duty was to perform manual labor. By way of example only, he performed daily dockwalks to ensure that boats were properly secured, inspected the docks for required repairs, performed mooring maintenance, winterized the dock water system, towed vessels for service, and dug holes to repair underground fuel and water lines. He was neither employed in a *bona fide* administrative nor professional capacity.

12. From approximately February of 2019 until his termination from employment on or about May 26, 2021, Defendants employed Plaintiff as Whitestake Point Marina's "Facilities Manager." At the time of his termination from employment, Plaintiff made approximately fifty-two thousand four hundred thirty-six dollars eighty cents ($52,436.80) per year.

13. As "Facilities Manager," Plaintiff's primary job duty was to perform manual labor. By way of example only, he inspected the Marina's boats and fixed their defects, inspected the docks on a daily basis, performed structural repairs to improve the boats, ensured that boats were properly positioned in their slips so that the boats would not sink, secured anchors and mooring buoys, set up fenders, repaired joists with sister boards, diagnosed and fixed safety hazards, and broke ice during winter

3

months. Plaintiff was neither employed in a *bona fide* administrative nor professional capacity.

14. At all times relevant herein, Plaintiff reported to Defendant Winchester and to Elsie Whitman, the then-owners of the Whitestake Point Marina.

15. At all times relevant herein, Defendant Winchester constituted an owner of Whitestake Point Marina which was operated by Defendant Whitestake. Defendant Winchester had authority to hire, fire, suspend, and otherwise discipline Plaintiff; authority to supervise Plaintiff and control his work schedule and employment conditions; authority to determine the rate and method of Plaintiff's pay; and authority to maintain Plaintiff's employment records. Defendant Winchester thereby exercised substantial control over the terms and conditions of Plaintiff's employment to qualify as Plaintiff's "employer" under the MWHL, MWPCL, and FLSA.

16. While employed by Defendants, Plaintiff regularly worked over forty (40) hours per week. From approximately January 14, 2019 to May 23, 2021, Plaintiff worked approximately six hundred nine (609) hours, all of which were in excess of forty (40) hours during each of his workweeks, for which he was not compensated. Plaintiff submitted weekly timesheets to Defendant Winchester documenting said hours.

17. Taking Plaintiff's hourly rate of twenty-five dollars twenty-one cents ($25.21) and the overtime premium of at least one and one-half (1.50) times the regular hourly rate into consideration, he is thereby owed at least twenty-three thousand twenty-nine dollars thirty-three cents ($23,029.33) for the January 14, 2019 to May 23, 2021 time period.

4

18. While Plaintiff served as "Facilities Manager," he frequently complained to Defendant Winchester about not receiving overtime. Defendant Winchester regularly and inaccurately told him that he was not entitled to overtime because he was "salaried," which constituted a false statement.

19. In or about January of 2020, Plaintiff entered into a contract for services with Defendants. In exchange for Defendants agreeing to restore Plaintiff's personal boat-a 1995 Grady-White Boat (hereinafter referred to as "the Boat"), Plaintiff agreed to provide reasonable compensation to Defendants subsequent to the completion of the restoration services. Plaintiff brought the Boat to Defendants' work premises in or about February of 2020. Defendants worked on the Boat in or about February of 2020 and from about January to February of 2021.[1]

20. Defendants' workmanship on the Boat was deficient in a multitude of ways and not performed in a workmanlike manner. By way of example only, Defendants' employees (not including Plaintiff) dropped fiberglass resin on the Boat's stainless steel, damaged the Boat's stainless steel and plexiglass, dropped filler on the boat's rub rail, and sloppily painted the boat.

21. In or about the middle of November of 2020, Plaintiff met with Defendant Winchester, Ms. Whitman, Mike Waldo, then-employed by Defendant as Service Manager, and S. Hamilton Chaney, co-owner of Herrington Harbour in Tracey's Landing, Maryland and who was ultimately expected to purchase Whitestake Point Marina in or about June of 2021. At that time, it was stated that Plaintiff would be

---

[1] Due to the COVID-19 health pandemic, Defendants did not work on the Boat from approximately March of 2020 to January of 2021.

5

brought on to the new company and thereby his employment would continue after Mr. Chaney purchased Whitestake Point Marina.

22. On December 10, 2020, at approximately 10:00am, Plaintiff was scheduled to have a meeting with Mr. Chaney at Whitestake Point Marina. Plaintiff timely arrived for the meeting, but Defendant Winchester and Ms. Whitman were in the middle of speaking with Mr. Chaney and instructed Plaintiff to come back later.

23. As Plaintiff was leaving, he heard Defendant Winchester refer to him and Mr. Waldo, and state "they do not think we know what we are doing because we are women." Defendant Winchester made this false and defaming comment about Plaintiff to Mr. Chaney and in Ms. Whitman's presence.

24. In or about January and February of 2021, Plaintiff gave Defendants three (3) chances to remedy their grossly unsatisfactory work to the Boat and thereby cure their contractual breaches. Defendants ultimately failed to fulfil their contractual obligations and did not perform their work to the Boat in a workmanlike manner.

25. On or about March 1, 2021, Mike McVearry, who replaced Mr. Waldo as Defendants' Service Manager, stated the Boat "looks like shit." Mr. McVearry's declaration referenced the unworkmanlike quality of Defendants' work performed on the Boat.

26. In or about April and/or of May of 2021, Mr. Raley spoke with Defendant Winchester about not being compensated for overtime hours despite being entitled to overtime pay.

27. On or about April 30, 2021, when Plaintiff was on approved leave, Defendants purposefully did not perform a dock walk. When Plaintiff would be absent from

work, it was Defendants' policy to assign the daily dock walk to another employee. In blatant violation of this policy, Defendants deliberately ensured that a dock walk was not conducted on April 30, 2021, even though there were storms that day, thereby jeopardizing the safety of the Whitestake Point Marina.

28. Because of Defendants' actions on April 30, 2021, Jed Dickman, employed by Herrington Harbour as a Manager and who worked with Mr. Chaney, believed that Plaintiff had neglected his job duties that day, which was not the case because Plaintiff had been on approved leave.

29. On or about May 22, 2021, and without providing an explanation, Mr. Dickman told Plaintiff that he would not be brought on as an employee after Mr. Chaney bought Whitestake Point Marina.

30. On or about May 23, 2021, Defendants placed Plaintiff on leave.

31. On or about May 26, 2021, Plaintiff told Defendants that the Boat was in poor condition, but they refused to address his legitimate concerns. Defendants advised Plaintiff that he was terminated from employment.

32. On or about June 4, 2021, Mr. Cheney bought Whitestake Point Marina and Plaintiff was not hired to work there.

33. At all times relevant herein, Plaintiff met and/or exceeded Defendants' legitimate job expectations. Prior to his termination from employment, Plaintiff had not been subjected to disciplinary action.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## OF 1938 (AS AMENDED)
## FLSA, 29 U.S.C. § 201, *et seq.*
## ALL DEFENDANTS

34. Plaintiff hereby restates and incorporates paragraphs 1-33 of this Complaint as though fully set forth herein.

35. At all times material herein, Plaintiff was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

36. At all times material herein, Defendants were each an "employer" of the Plaintiff covered by the FLSA, 29 U.S.C. § 203(d), and Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. § 203(e).

37. Defendants violated the FLSA by failing to account for and compensate Plaintiff for all hours he worked, including, but not limited to, the hours he worked in excess of forty (40) hours each workweek, as well as the corresponding overtime premium pay for each hour he worked in excess of forty (40) hours each workweek, as described in the Facts Common to All Counts, *supra.*

38. The FLSA regulates, among other things, the payment of an overtime premium, "not less than one and one-half times the regular rate at which [the employee] is employed" for all hours worked per week in excess of forty (40), by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

39. Defendants are subject to the overtime pay requirements of the FLSA because they constituted enterprises engaged in commerce. *See* 29 U.S.C. §§ 203(r), (s).

8

40. Defendants' failure to properly compensate Plaintiff for all hours worked was a blatant violation of the FLSA.

41. Defendants' failure to properly compensate Plaintiff not less than one and one-half times the regular rate at which he was employed for all hours worked per week in excess of forty (40) was a violation of the FLSA, 29 U.S.C. § 207 and was willfully perpetrated, as Defendants neither acted in good faith nor had reasonable grounds to believe their actions and omissions were not a violation of the FLSA.

42. As a result of the aforesaid willful violations of the FLSA's provisions, compensation in the amount of twenty-three thousand twenty-nine dollars thirty-three cents ($23,029.33), at a minimum, which takes hours worked and overtime premium into consideration, has been unlawfully withheld by Defendants from the Plaintiff for which Defendants are liable pursuant to 29 U.S.C. § 216(b).

43. Plaintiff is further entitled to an award of liquidated damages in an amount equal to the amount of unpaid compensation as described above pursuant to the FLSA, 29 U.S.C. § 216(b).

44. Plaintiff is further entitled to damages within the three (3) years preceding the date of filing of this Complaint, including periods of equitable tolling, because Defendants acted willfully and knew and/or showed reckless disregard of whether their conduct was prohibited by the FLSA. *See* 29 U.S.C. § 255(a).

45. Pursuant to the FLSA, 29 U.S.C. § 216(b), Plaintiff is also entitled to reasonable attorney's fees and costs of the action.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT II
## RETALIATION
## (Materially Adverse Actions and Protected Activity Deterrents)
## FLSA, 29 U.S.C. § 201, *et seq.*
## ALL DEFENDANTS

46. Plaintiff hereby restates and incorporates paragraphs 1-33 of this Complaint as though fully set forth herein.

47. The FLSA renders it unlawful for employers such as Defendants "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act." 29 U.S.C. § 215(a)(3).

48. While Plaintiff served as "Facilities Manager," he frequently complained to Defendants about not receiving overtime. Defendants regularly and inaccurately told him that he was not entitled to overtime because he was "salaried," which constituted a false statement.

49. In or about April and/or of May of 2021, Plaintiff spoke with Defendants about not being compensated for overtime hours despite being entitled to overtime pay.

50. Plaintiff thus engaged in activity protected from retaliation under the FLSA, including, but not limited to, asserting complaints to Defendants with a reasonable and good faith belief that he was asserting his right to overtime which was protected by federal law. *See* 29 U.S.C. § 215(a)(3).

51. Defendants took materially adverse actions against Plaintiff subsequent to his protected activity by, *e.g.*, defaming him on December 10, 2020, interfering with his economic relationship with Herrington Harbour, and terminating his employment on or about May 26, 2021.

52. The close proximity in time between Plaintiff's protected activities and Defendants' decision to take the above-described materially adverse actions against Plaintiff, establishes a causal connection between the two (2).

53. Because of Defendants' willful violations of the FLSA, 29 U.S.C. § 215(a)(3), Defendants are liable to Plaintiff under 29 U.S.C. § 216(b) for monetary relief including back pay, an additional equal amount as liquidated damages, and reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### COUNT III
### VIOLATION OF MARYLAND WAGE AND HOUR LAW
### MD. CODE ANN., LAB. & EMPL., § 3-401, *et seq.*
### ALL DEFENDANTS

54. Plaintiff hereby restates and incorporates paragraphs 1-33 of this Complaint as though fully set forth herein.

55. At all times material herein, Plaintiff was entitled to the rights, protections, and benefits provided under the Maryland Wage and Hour Law. MD. CODE ANN., LAB. & EMPL., § 3-401, *et seq*.

56. At all times material herein, Defendants were each an "employer" of the Plaintiff covered by the MWHL. MD. CODE ANN., LAB. & EMPL., § 3-401(b).

57. The MWHL requires employers such as Defendants to compensate Plaintiff for all hours worked, including, but not limited to, at a rate of one and one-half times his regular hourly rate of pay for each hour worked in excess of forty (40) hours per workweek. MD. CODE ANN., LAB. & EMPL., §§ 3-415, 3-420.

58. Defendants willfully violated the MWHL by failing to account for and compensate Plaintiff for all hours he worked, including, without limitation, the hours he worked in

excess of forty (40) hours each workweek, as well as the corresponding overtime premium pay for each hour he worked in excess of forty (40) hours each workweek, as stated in the Facts Common to All Counts, *supra*.

59. As a result of the aforesaid willful violations of the MWHL, compensation in the amount of twenty-three thousand twenty-nine dollars thirty-three cents ($23,029.33), at a minimum, which takes hours worked and overtime premium into consideration, has been unlawfully withheld by Defendants from the Plaintiff for which Defendants are liable pursuant to the MWHL.

60. Pursuant to MD. CODE ANN., LAB. & EMPL., §§ 3-427(a), (d), Defendants are thereby liable to Plaintiff for unpaid wages (including unpaid overtime compensation), an additional amount equal to the unpaid wages (including unpaid overtime compensation) as liquidated damages, and reasonable counsel fees and costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT IV
## VIOLATION OF THE MARYLAND WAGE PAYMENT AND COLLECTION LAW
## MD. CODE ANN., LAB. & EMPL., § 3-501, *et seq.*
## ALL DEFENDANTS

61. Plaintiff hereby restates and incorporates paragraphs 1-33 of this Complaint as though fully set forth herein.

62. At all times material herein, Plaintiff was entitled to the rights, protections, and benefits provided under the Maryland Wage Payment and Collection Law, MD. CODE ANN., LAB. & EMPL., § 3-501, *et seq.*

63. At all times material herein, Defendants were each an "employer" of the Plaintiff covered by the MWPCL. MD. CODE ANN., LAB. & EMPL., § 3-501(b).

64. The MWPCL requires employers such as Defendants to pay Plaintiff "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." MD. CODE ANN., LAB. & EMPL., § 3-505(a).

65. Defendants willfully failed or refused to pay Plaintiff all wages due for work he had performed before the termination of his employment, as described in the Facts Common to All Counts, *supra,* including accumulated unpaid overtime, in violation of the MWPCL.

66. Defendants did not withhold the wages due as a result of a *bona fide* dispute. *See* MD. CODE ANN., LAB. & EMPL., § 3-507.2(b).

67. Pursuant to the MWPCL, MD. CODE ANN., LAB. & EMPL., § 3-507.2, Defendants are liable to Plaintiff for three (3) times the amount of his unpaid wages, and reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT V
## BREACH OF CONTRACT
## ALL DEFENDANTS.

68. Plaintiff hereby restates and incorporates paragraphs 1 through 33 of this Complaint as though fully set forth herein.

69. In or about January of 2020, Plaintiff entered into a contract for services with Defendants. In exchange for Defendants agreeing to restore Plaintiff's personal boat-a 1995 Grady-White Boat (hereinafter referred to as "the Boat"), Plaintiff agreed to provide reasonable compensation to Defendants subsequent to the completion of the restoration services. Plaintiff brought the Boat to Defendants' premises in or about

February of 2020. Defendants worked on the Boat in or about February of 2020 and from about January to February of 2021.[2]

70. Plaintiff regularly spoke with Defendants about Defendants' contractual obligations. Defendant Winchester also spoke on behalf of Defendant Whitestake regarding Defendants' contractual obligations.

71. Defendants' workmanship on the Boat was deficient in a multitude of ways and not performed in a workmanlike manner. By way of example only, Defendants' employees (not including Plaintiff) dropped fiberglass resin on the Boat's stainless steel, damaged the Boat's stainless steel and plexiglass, dropped filler on the boat's rub rail, and sloppily painted the boat.

72. Despite the Plaintiff giving the Defendants three (3) opportunities to perform the terms of the contract in a workmanlike manner, Defendants failed to do so and thereby materially breached their contract with Plaintiff.

73. On or about March 1, 2021, Mike McVearry, who replaced Mr. Waldo as Defendants' Service Manager, admitted that the Boat "looks like shit." Mr. McVearry's declaration referenced the unworkmanlike quality of the work Defendants performed on the Boat.

74. On or about May 26, 2021, Plaintiff told Defendants that the Boat was in poor condition, but they refused to address his legitimate concerns.

75. Pursuant to the aforementioned contract, Defendants were obligated to repair the Boat in a workmanlike manner. Because Defendants did not do so, despite being given several chances to cure their breaches, they materially breached their contract with

---

[2] Due to the COVID-19 health pandemic, Defendant did not work on the Boat from approximately March of 2020 to January of 2021.

14

Plaintiff. Defendants' obligation to perform the contract in a workmanlike manner was a condition precedent to any obligation Plaintiff had to tender payment to Defendants.

76. Plaintiff has sustained damages due to Defendants' breach, as the Boat is damaged because of Defendants' negligent behavior and unworkmanlike performance.

77. Plaintiff will incur future expenses to remedy Defendants' failure to perform the terms of the contract in a workmanlike manner.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT VI
## DEFAMATION
## ALL DEFENDANTS

78. Plaintiff hereby restates and incorporates paragraphs 1 through 33 of this Complaint as though fully set forth herein.

79. On December 10, 2020, during a conversation with Mr. Chaney and while acting in the course and scope of her employment with Defendant Whitestake, Defendant Winchester referred to the Plaintiff and stated "they [referring to Plaintiff and Mr. Waldo] do not think we know what we are doing because we are women."

80. Defendant Winchester thereby made a false and defamatory statement about Plaintiff to Mr. Chaney. Defendant Winchester recklessly disregarded the false and defamatory nature of her statement, and/or acted negligently by failing to ascertain the false and defamatory nature of her statement.

81. Because Defendant Winchester was acting within the scope and course of her employment when she made the defamatory statement, her conduct is imputed to Defendant Whitestake.

15

82. Plaintiff suffered harm as a result of Defendant Winchester's defamatory statement, in that his employment was not carried over when Mr. Chaney purchased Whitestake Point Marina on or about June 4, 2021. This has caused Plaintiff to suffer lost wages and has hurt his reputation and livelihood.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT VII
## TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONSHIPS
## ALL DEFENDANTS

83. Plaintiff hereby restates and incorporates paragraphs 1 through 33 of this Complaint as though fully set forth herein.

84. On December 10, 2020, during a conversation with Mr. Chaney and while acting in the course and scope of her employment with Defendant Whitestake, Defendant Winchester referred to the Plaintiff and stated "they [referring to Plaintiff and Mr. Waldo] do not think we know what we are doing because we are women."

85. On or about April 30, 2021, when Plaintiff was on approved leave, Defendants purposefully did not perform a dock walk. When Plaintiff would be absent from work, it was Defendants' policy to assign the daily dock walk to another employee. In blatant violation of this policy, Defendants deliberately ensured that a dock walk was not conducted on April 30, 2021, even though there were storms that day, thereby jeopardizing the safety of the Whitestake Point Marina.

86. Because of Defendants' actions on April 30, 2021, Mr. Dickman believed that Plaintiff had neglected his job duties that day, which was not the case because Plaintiff had been on approved leave.

87. On or about May 22, 2021, and without providing an explanation, Mr. Dickman told Plaintiff that he would not be brought on as an employee after Mr. Chaney bought Whitestake Point Marina.

88. On or about June 4, 2021, Mr. Cheney bought Whitestake Point Marina and Plaintiff was not hired to work there.

89. Upon information and belief, Defendants influenced Herrington Harbour's decision to not hire Plaintiff.

90. Defendants thereby tortiously interfered with Plaintiff's economic relationship with Herrington Harbour. Defendants deliberately induced Herrington Harbour to not employ Plaintiff.

91. As a result of Defendants maliciously and intentionally interfering with Plaintiff's economic relationship with Herrington Harbour, Plaintiff suffered lost wages, as he did not become employed by Herrington Harbour.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Thomas S. Raley, Plaintiff, demands judgment jointly and severally against Defendants Whitestake Improvements LLC and Mary Tod Winchester, as follows:

  a. Compensatory damages in excess of $75,000.00;
  b. Punitive damages in excess of $75,000.00;
  c. Backpay and interest on same;
  d. Prejudgment and post judgment interest;
  e. Award attorney's fees and costs, including expert witness fees, as allowed by law;

f.  And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully Submitted,

_____/s/_____
James L. Ellison II, Esq. (CPF No. 1112130275)
Bennett & Ellison, P.C.
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: jellison@belawpc.com

_____/s/_____
Jeffrey J. Sadri, Esq. (CPF No. 1306190265)
Bennett & Ellison, P.C.
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: jsadri@belawpc.com

*Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff, Thomas S. Raley, by and through his attorneys, James L. Ellison II, Esq., Jeffrey J. Sadri, Esq., and the law office of Bennett & Ellison, P.C., hereby demands that this above captioned matter be tried before a jury on all issues so triable.

                                       Respectfully Submitted,

                                       _____/s/_____
                                       James L. Ellison II, Esq. (CPF No. 1112130275)
                                       Bennett & Ellison, P.C.
                                       2086 Generals Highway, Ste. 201
                                       Annapolis, Maryland 21401
                                       Tel: (410) 974-6000
                                       Email: jellison@belawpc.com

                                       _____/s/_____
                                       Jeffrey J. Sadri, Esq. (CPF No. 1306190265)
                                       Bennett & Ellison, P.C.
                                       2086 Generals Highway, Ste. 201
                                       Annapolis, Maryland 21401
                                       Tel: (410) 974-6000
                                       Email: jsadri@belawpc.com

                                       *Counsel for Plaintiff*