IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS S. RALEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: DLB-22-194 |
| WHITESTAKE IMPROVEMENTS LLC, *et al.*, | * | |
| | * | |
| Defendants. | | |
| | * | |

**MEMORANDUM OPINION**

Thomas S. Raley filed this lawsuit against his former employer Whitestake Improvements LLC ("Whitestake") and Whitestake's owner Mary Tod Winchester. ECF 2. Raley alleges the defendants failed to pay him for overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201–219, the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-415, 3-420, and the Maryland Wage Payment and Collection Law, Lab. & Empl. § 3-505(a); and retaliated against him in violation of the FLSA after he complained about his insufficient wages. *Id.* ¶¶ 37–42, 48–52, 58–59, 64–66.[1]

The defendants moved to compel arbitration and dismiss Raley's complaint or, in the alternative, to stay proceedings pending arbitration. ECF 5 & 5-2. Raley opposed the motion, ECF 11 & 11-1, and the defendants filed a reply, ECF 12. At the Court's request, the parties supplemented their filings. ECF 14 & 15. A hearing is not necessary. *See* Loc. R. 105.6. There is no valid arbitration agreement between the parties because the defendants' promise to arbitrate

---

[1] Raley also asserts state law claims of defamation, tortious interference with contract, and breach of contract.

was illusory and the purported arbitration agreement was unsupported by consideration. Therefore, the motion to compel arbitration is denied.

I.      **Factual Background**

The defendants owned Whitestake Point Marina, which operated a marina called Hartge Yacht Harbor ("Hartge") in Galesville, Maryland. ECF 2, ¶¶ 10–11; ECF 5-3, ¶¶ 2–3. Raley began working at Hartge as a dockmaster in February 2009. ECF 2, ¶ 10; ECF 5-3, ¶¶ 2–3. Raley's employment was governed by a Hartge Yacht Harbor Employee Manual ("Manual"). ECF 5-3, ¶ 4. According to an updated version of the Manual dated February 15, 2017, the Manual "sets forth the general administrative policies, goals, and benefits of Hartge Yacht Harbor and replaces and supersedes any prior manual(s)." ECF 5-4, at 2.

On page 19 of the 21-page Manual, under a heading called "Other Practices," the following provision appears:

> Arbitration; Choice of Law
>
> Any controversy or claim arising out of or relating to the employment relationship created between the employer (Hartge) and employee (you), including all topics covered in this Employee Manual, and the interpretation of this Manual, or any alleged breach of it, shall be settled by arbitration in accordance with the Arbitration Rules of the American Arbitration Association, with such arbitration to take place in Anne Arundel County, Maryland, with an agreed upon arbitrator. If the parties cannot agree on an arbitrator, a court of competent jurisdiction shall appoint an arbitrator at the request of either Party. Although the parties shall initially bear the cost of arbitration equally, the prevailing party, if any as determined by the arbitrator at the request of the parties which is hereby deemed made, shall be entitled to reimbursement for its share of costs and reasonable attorneys' fees, as well as interest at the statutory rate. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The determination of the arbitrator in such proceeding shall be final, binding, and non-appealable.
>
> This Manual shall be interpreted, constructed, and enforced in all respects in accordance with the laws of the State of Maryland.

ECF 5-4, at 19.  On the next page, the Manual states:  "We have supplied a separate copy of the Acknowledgement Form.  Please sign, date, and return this form to your supervisor after reading this Employee Manual; doing so is a prerequisite for employment with Hartge Yacht Harbor."  *Id.* at 20.  The Acknowledgement Form is the final page of the Manual.  It states, in relevant part:

> This Employee Manual has been prepared for your understanding of the policies, practices, and benefits of Hartge Yacht Harbor; it is important to read this <u>entire Manual</u>.  We reserve the right to make changes at any time without notice and to interpret these policies and procedures at the discretion of Hartge. . . .
>
> By signing below, you acknowledge that you have read and understood the policies outlined in this Employee Manual.  You agree to comply with the policies contained in this Manual and to read and understand any revisions to it and be bound by them. . . .
>
> You acknowledge that this Manual is not intended to create, nor shall be construed as creating, any express or implied contract of employment for a definite or specific period of time between you and Hartge or to otherwise create express or implied legally enforceable contractual obligations on the part of Hartge concerning any terms, conditions, or privileges of employment.

ECF 5-5.  Raley signed the Acknowledgement Form on February 17, 2017.  *Id.*

Raley worked for Whitestake as a dockmaster until January 2019 and began working as a facilities manager at the marina in February 2019.  ECF 2, ¶¶ 10, 12.  On or about May 26, 2021, the defendants terminated Raley's employment.  *Id.* ¶ 12.

On December 10, 2021, Raley filed this suit in the Circuit Court for Anne Arundel County.  ECF 2.  The defendants removed the case to this Court and moved to compel arbitration of all claims.  ECF 1 & 5.

**II.     Standard of Review**

The Federal Arbitration Act ("FAA") enables a party to an arbitration agreement to ask the Court "to move . . . an arbitrable dispute out of court and into arbitration as quickly and easily as possible" by either staying the litigation or compelling arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (citing 9 U.S.C. §§ 3–4).  A motion under either

section "call[s] for an expeditious and summary hearing, with only restricted inquiry into factual issues." *Id.*; *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . [is] in issue, the court shall proceed summarily to the trial thereof.").

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477–78 (D. Md. 2012). When the parties present evidence with their briefs on a motion to dismiss or compel arbitration, courts often treat the motion as one for summary judgment. *Farmer v. Macy's, Inc.*, No. TDC-17-567, 2019 WL 5079763, at *2 (D. Md. Oct. 10, 2019) (treating motion to compel arbitration as motion for summary judgment where the court had to consider evidence outside the pleadings to determine "the formation or validity of the arbitration agreement"); *see Noe v. City Nat'l Bank*, 828 F. App'x 163, 166 (4th Cir. 2020) (unpublished) (noting that the court may consider evidence on a motion to compel arbitration, as it would on summary judgment); *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (noting that when "the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment"). Because both parties urge the Court to refer to the Manual and the Acknowledgement Form, documents outside the pleadings, the Court will treat the pending motion as one for summary judgment. And because the material facts are undisputed, the Court may grant judgment as a matter of law. The defendants, as the moving parties, bear the burden of establishing they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III.     Discussion

Pursuant to the FAA, courts must enforce written arbitration agreements when a party seeks such relief. 9 U.S.C. § 3. The Act "reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H.*

*Cone Mem'l Hosp.*, 460 U.S. at 24). To prevail on a motion to compel arbitration, a party must show

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins*, 303 F.3d at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

Raley contends that he and the defendants never formed a valid arbitration agreement and that the Court should decide this threshold issue. The defendants argue that the arbitrator, not the Court, should decide whether the apparent agreement to arbitrate was valid. The Court agrees with Raley. The defendants' position hinges on the unfounded premise that Raley is not challenging the existence of a valid arbitration agreement. He is. Raley argues that he did not enter into an arbitration agreement because Hartge's "promise to arbitrate claims was an illusory one" and the purported arbitration agreement fails for lack of consideration. ECF 11-1, at 4 & 6 ("Defendants thereby did not bind themselves to arbitration, and they could change the arbitration provision at their sole discretion."). When, as here, a non-moving party "challenges specifically the validity of the agreement to arbitrate," the Court decides the issue. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, 446 (2006); *see also Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (affirming that "the district court—rather than the arbitrator—decide[s] whether the parties have formed an agreement to arbitrate") (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)).

This case is not, as the defendants argue, factually similar to *Buckeye*, 546 U.S. 440, and *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631 (4th Cir. 2002). In *Buckeye*, the plaintiffs, customers of a check cashing company who contracted for deferred-payment transactions at high interest rates, argued that "the contract as a whole (including its arbitration provision) is rendered

invalid by the [defendant's] usurious finance charge." 546 U.S. at 444. The plaintiffs did not attack the validity of the arbitration clause itself. The Supreme Court held that "a challenge to the validity of the contract as a whole, and not specifically the arbitration clause, must go to the arbitrator." *Id*. at 449. Similarly, in *Snowden*, the plaintiffs, a class of customers of another check cashing business, attacked the validity of the contract as a whole based on the usurious interest rates charged by the defendant and the fact that the check cashing business was not a state-licensed money lender. 290 F.3d at 636. The plaintiffs also argued the arbitration provision was unenforceable for various reasons that the Fourth Circuit rejected. *Id.* at 638–39. The Fourth Circuit held that because plaintiffs were challenging the validity of the contract as a whole, and because they did not show a "sufficient justification . . . to hold the Arbitration Agreement unenforceable," the motion to compel arbitration should have been granted. *Id.* at 639. Unlike the *Buckeye* and *Snowden* plaintiffs, Raley attacks the validity of the arbitration agreement on the grounds that it is unsupported by consideration. Under these circumstances, the Court, not the arbitrator, decides whether the parties reached a valid agreement to arbitrate.[2]

The defendants also argue the arbitration clause is severable from the Manual and must be enforced according to its terms without reference to any other part of the Manual, including the Acknowledgement Form. Not so. The Supreme Court has observed that, pursuant to 9 U.S.C. § 2, "courts treat [an] arbitration clause as severable from the contract in which it appears and enforce it according to its terms *unless* the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself, or claims that the agreement to arbitrate was '[n]ever

---

[2] The defendants argue also that the "gateway" issue of arbitrability must be decided by an arbitrator, not the Court, because the arbitration clause states that arbitration shall be held "in accordance with the Arbitration Rules of the American Arbitration Association." ECF 5-2, at 5. This unpersuasive argument presupposes a valid arbitration agreement exists—an issue reserved for courts to decide. *See Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234 & n.9.

concluded.'" *Granite Rock*, 561 U.S. at 301 (emphasis added) (quoting *Buckeye*, 546 U.S. at 444 n.1; internal citations omitted). Raley claims no agreement to arbitrate ever formed. Under these circumstances, the Court does not blindly enforce the arbitration clause according to its terms. The Court applies "state-law principles of contract formation and interpretation" to determine whether the parties formed a valid arbitration agreement in the first instance. *Coady*, 32 F.4th at 291; *see also Granite Rock*, 561 U.S. at 303 (stating that the Court only "applie[s] the presumption favoring arbitration" when the Court "conclu[des] that arbitration . . . is what the parties intended because their express agreement to arbitrate was validly formed").

"Under Maryland law, an agreement to arbitrate disputes is enforceable if it is a valid contract." *Caire*, 982 F. Supp. 2d at 591; *see also Cheek v. United Healthcare of the Mid-Atl., Inc.*, 835 A.2d 656, 661 (Md. 2003).[3] A valid contract forms if there is "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co.*, 392 F.3d 114, 123 (4th Cir. 2004)). There is consideration if "a performance or a return promise [is] bargained for," and "[a] performance is bargained for if it is sought by the promisor in exchange for his . . . promise and is given by the promisee in exchange for that promise." *Pettiford v. Next Generation Tr. Serv.*, 226 A.3d 15, 27 (Md. 2020) (*quoting Chernick v. Chernick*, 610 A.2d 770, 774 (Md. 1992)). A promise is illusory and does not provide consideration if "the promisor retains an unlimited right to decide later the nature or extent of his performance." *Cheek*, 835 A.2d at 662–62 (quoting 1 Williston, Contracts § 4:24 (4th ed. 1990)).

To interpret a contract's terms, the Court "takes a harmonious look at the entirety of the contract." *Travelocity.com LP v. Comptroller of Md.*, 250 A.3d 175, 184 (Md. 2021) (citing

---

[3] The parties agree that Maryland law applies. ECF 5-4, at 19 (choice of law provision).

*Credible Behavioral Health, Inc. v. Johnson*, 220 A.3d 303, 312 (Md. 2019)); *see also Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232–33 (Md. 2013). Therefore, the Court "do[es] not read each clause or provision separately." *Schneider Elec. Bldgs. Critical Sys., Inc. v. W. Sur. Co.*, 165 A.3d 485, 490 (Md. 2017). Additionally, the Court "follows the objective interpretation principle," under which it "give[s] effect to [the] plain meaning" of unambiguous language without delving "into what the parties may have subjectively intended." *Coady*, 32 F.4th at 291 (quoting *Rourke v. Amchem Prods., Inc.*, 863 A.2d 926, 941 (Md. 2004)). Accordingly, "only the intention of the parties as expressed in the language of the contract controls the analysis.'" *Id.* (quoting *Cain v. Midland Funding, LLC*, 156 A.3d 807, 815 (Md. 2017)).

The Fourth Circuit recently decided whether, under Maryland law, an arbitration agreement within an employee handbook was valid and enforceable. *Coady*, 32 F.4th 288. The defendant, Nationwide Motor Sales, sought to compel arbitration over fraud claims asserted by former employees. *Id.* at 290. The issue before the Court was whether the arbitration agreement, a five-paragraph section in the employee handbook called "Agreement to Submit to All Employment Disputes to Arbitration," was illusory under Maryland law because, in the handbook's acknowledgement receipt signed by the plaintiffs, Nationwide retained the right to amend or abolish the handbook's policies and procedures without notice to the employees. *Id.* Nationwide argued the Court could not consider the handbook's acknowledgement receipt and should limit its review to the language in the arbitration section, which stated a clear intention to arbitrate employment-related claims and specified the applicable rules and procedures. *Id.* at 290–91. Applying Maryland contract law, the Fourth Circuit noted it could "examine only the language of the arbitration agreement itself," and it concluded that the acknowledgement receipt was part of the arbitration agreement. *Id.* at 291–92. The fifth and final paragraph of the arbitration section

incorporated the receipt by stating that an employee's "signature on the 'Employee Handbook and Operating Procedures' Acknowledgement Receipt . . . confirm[s] that [he] ha[s] read and understand[s] each of the four sections set forth above in this Agreement." *Id.* at 292. The Court held that, because "[i]n operation, an employee signs the [r]eceipt to assent to the [a]greement," and the receipt specifically identified the arbitration section as one of the employee handbook sections to which it applies, the "receipt must be read in conjunction with the arbitration agreement." *Id.* The Court then concluded that the agreement was illusory because the receipt gave Nationwide the right to change or abolish the employment handbook without notice. *Id.* at 293.

This case is similar, even if not identical, to *Coady*. Here, the unsigned, uninitialed, one-paragraph arbitration clause is contained in the final section of the Manual and followed by the signed Acknowledgement Form. The arbitration clause, on its own, is not a contract; it is just a paragraph in an employee manual. While the arbitration clause does not, as in *Coady*, specifically refer to the Acknowledgement Form, the Court must still examine the Acknowledgement Form because it is the only evidence of Raley's agreement to the arbitration clause. Failing to consider the Acknowledgement Form and the arbitration clause together would violate basic principles of contract law that courts must "take[] a harmonious look at the entirety of the contract," *Travelocity.com*, 250 A.3d at 184, and "not read each clause or provision separately," *Schneider*, 165 A.3d at 490; *see also Dumbarton Improvement Ass'n*, 73 A.3d at 232–33. The Acknowledgement Form states, in part, that the Manual "has been prepared for your understanding of the policies, practices, and benefits of Hartge Yacht Harbor; it is important to read this <u>entire Manual</u>." ECF 5-5 (emphasis in original). On the penultimate page of the Manual, immediately following the arbitration clause, it states: "We have supplied a separate copy of the

Acknowledgement Form. Please sign, date, and return this form to your supervisor after reading this Employee Manual; doing so is a prerequisite for employment with Hartge Yacht Harbor." ECF 5-4, at 20. As directed, Raley signed the Acknowledgement Form—an act reflecting his assent to the arbitration clause. *See Coady*, 32 F.4th at 292. Thus, the Acknowledgement Form and the arbitration clause together constitute the purported agreement to arbitrate, and they must be construed together.

Construing them together, the Court finds there was no consideration to support a binding arbitration agreement. "Under Maryland law, a promise to arbitrate is illusory—and thus cannot constitute the consideration necessary to support a binding contract—if the employer reserves the right 'to alter, amend, modify, or revoke the Arbitration Policy . . . at any time with or without notice.'" *Coady*, 32 F.4th at 292 (quoting *Cheek*, 835 A.2d at 662). That is exactly the case here. In the Acknowledgement Form, Hartge "reserve[d] the right to make changes at any time without notice and to interpret these policies and procedures at the discretion of Hartge." ECF 5-5. Among the policies and procedures that the defendants could change, at their will and without notice, was the arbitration provision. Because the defendants retained the ability to modify the arbitration clause at their sole discretion, their promise to arbitrate was illusory, and without a "mutual exchange of promises to arbitrate," no consideration supported the arbitration provision. *See Holmes*, 649 A.2d at 370; *see also Cheek*, 835 A.2d at 665. Raley did not enter into an agreement to arbitrate, and he cannot be forced "to submit any dispute to arbitration that [he] has not agreed to submit." *Cheek*, 835 A.2d at 661 (quoting *Curtis G. Testerman Co. v. Buck*, 667 A.2d 649, 654 (Md. 1995)).

The Court's holding here is consistent with two cases cited by the parties, *Hill*, 412 F.3d at 543, and *Cheek*, 835 A.2d 656. In *Hill*, both parties signed a "comprehensive six-page" arbitration

agreement that set forth their obligations and did not include an employer's reservation of rights to modify the agreement. 412 F.3d at 542. The Fourth Circuit held that the district court erred by looking beyond the free-standing arbitration agreement to a separate document that reserved the employer's right to change the company's internal dispute resolution program without notice. *Id.* at 543–44. *Hill* followed and distinguished itself from *Cheek*. *Id.* at 544. In the arbitration provision at issue in *Cheek*, the employer expressly reserved the right to alter or modify the arbitration policy at its sole discretion at any time. 835 A.2d at 669. The *Cheek* Court found the employer's reservation rendered its promise to arbitrate illusory, and the agreement failed for lack of consideration based on the reservation. *Id.* *Cheek* held that courts may not look beyond the four corners of the arbitration agreement to find consideration. *Id.* at 664. Here, in line with *Cheek* and *Hill*, the Court has not looked beyond the four corners of the purported arbitration agreement to determine whether an agreement to arbitrate was formed.

### IV. Conclusion

The parties did not form a valid arbitration agreement. Therefore, the defendants' motion to compel arbitration is denied. A separate Order will issue.

Date: <u>September 1, 2022</u>                                     /S/
                                                                                Deborah L. Boardman
                                                                                United States District Judge